**GEORGIA BROILERS, Inc., Plaintiff,**

v.

**WESTERN RESERVE FOODS, Inc., Defendant.**

Civ. A. No. 31761.

United States District Court
N. D. Ohio, E. D.

Sept. 11, 1957.

Russell E. Leasure, Cleveland, Ohio, for plaintiff.

John R. Crossen, Cleveland, Ohio, for defendant.

WEICK, District Judge.

This is an action upon an account for poultry sold and delivered by plaintiff to defendant in the amount of $9,310.31.

Defendant, in its answer, denied that it purchased the poultry from plaintiff or that it is indebted to plaintiff in any sum whatsoever.

The jurisdiction of the Court was based upon diversity of citizenship. The case was tried without a jury.

For at least a year prior to the sale of the poultry described in the account, the plaintiff, a Georgia corporation with its place of business in Gainesville, Georgia, had sold poultry from time to time to R. P. Wells, an individual doing business as Wells Poultry Farm. Wells owned a poultry farm located at Geneva, Ohio together with equipment for the processing of chickens. His son William and daughter-in-law lived on the farm

and operated it. R. P. Wells lived in Cleveland where he sold poultry from the farm to restaurants and hotels. Part of the poultry which he sold was obtained from plaintiff and from other suppliers.

On March 12, 1954 Wells entered into a written contract to sell the poultry farm, equipment and good will for the sum of $75,000 to Western Reserve Cold Storage Company, an Ohio corporation with its principal office and place of business in Ashtabula, Ohio. The papers and cash were to be deposited in escrow by April 20, 1954. Possession was to be given on or before May 1, 1954.

The defendant corporation is the successor by change of name to said Western Reserve Cold Storage Company, said change of name having been accomplished by resolution of its shareholders on June 24, 1954 which also increased its capital stock to 2,000 shares. A certificate of amendment to the articles of incorporation of said company giving effect to said changes was duly filed with the Secretary of State of Ohio on June 30, 1954.

The contract of sale provided for a brokerage commission to Miller Realty Company of Geneva which was the broker in connection with sale of the property. J. Earl Miller was President of Miller Realty Company and also a Vice President of the defendant corporation.

Mr. Miller testified that Wells Poultry Farm was heavily in debt, owing sums in excess of the purchase price, and could not complete the sale without scaling down its debts. Conferences were held with creditors and other people interested in investing in the business.

Mr. Miller testified that in June 1954 he worked out an arrangement with R. P. Wells whereby Henry Schumacher, who was interested in making an investment in the stock of defendant company and becoming manager of the farm, was to operate the farm while negotiations were continuing with creditors and others looking to the completion of the

sale of the property. Miller, as President of Miller Realty Company, was obviously interested in securing a brokerage commission on the sale for his company.

Schumacher took possession of the farm on June 28, 1954. William Wells continued in the employ of Schumacher.

A checking account in the Geneva Savings & Trust Company of Geneva, Ohio was opened under the name "Wells Poultry Farms, Division of Western Reserve Food, Inc." on July 2nd. Checks drawn on the account could only be signed by Henry Schumacher, Manager.

John Engle, Treasurer of defendant, signed what purported to be a resolution of its directors which was printed on the back of the bank's signature card and authorized the opening of the checking account.

No such resolution was ever adopted by the directors of defendant. No officer or director of defendant other than Engle knew anything about the resolution or signature card. No evidence was offered tending to prove that Engle had authority to open such an account.

Schumacher operated the farm from June 28, 1954 until November 1, 1954 and made sales in excess of $100,000. Miller and Engle, acting as trustees for creditors of Wells, then took over the operation of the farm. Engle borrowed money personally to continue the operation by the trustees.

The trustees operated the farm until the early part of January 1955 when Wells sold the farm and equipment to another purchaser who had no connection with defendant.

The sales represented by Items 1 and 2 in the account had been ordered by R. P. Wells, on June 26, 1954 and June 28, 1954, respectively, and each item was delivered by plaintiff to the farm two days after the order date. William Wells signed the delivery receipts therefor. Plaintiff billed the poultry to Wells Poultry Farm and sent the invoices for the items to it at Geneva, Ohio.

Items 3 and 4 in the account were ordered thereafter from the farm by either William Wells or Schumacher and were delivered at the farm. The delivery receipt for Item 3 was signed by William Wells and also probably for Item 4. Plaintiff billed Wells Poultry Farm for the said items and sent the invoices therefor to it at Geneva, Ohio.

All of the items in the account set forth in the complaint were originally carried on plaintiff's accounts receivable ledger as sales made to Wells Poultry Farm. The amounts so charged were the reasonable value of the poultry.

In August 1954, plaintiff made out a new sheet in its accounts receivable ledger whereby the poultry was charged to defendant and a credit issued therefor to Wells Poultry Farm.

James Evans, Secretary and Treasurer of plaintiff testified that he directed the change in the records after talking with its agent in Cleveland who handled the sales of the poultry.

■ An action on an account for merchandise sold and delivered is contractual in nature. The burden of proof is upon the plaintiff to prove by a preponderance of the evidence that defendant contracted with it to purchase the poultry. There was no claim that the contract was in writing.

The first two items in the account were ordered from plaintiff by R. P. Wells, doing business as Wells Poultry Farm and were delivered at the farm before plaintiff received any information concerning change of ownership or possession of the farm. After June 28, 1954, R. P. Wells kept an account record on a card of his transactions with Schumacher, which he carried under the name of the defendant. He entered a charge thereon under date of July 7, 1954 for the first two items on plaintiff's account amounting to $5620.20. Later, on August 16, 1954, Wells entered a credit thereon in that amount, after he in turn had received credit therefor from plaintiff. It would seem to be established that in selling the first two items of

the account plaintiff dealt solely with Wells. The subsequent reversal of the account entries was not binding on defendant.

Defendant did not, either by itself or through any agent, contract with plaintiff to purchase the poultry represented by the first two items in the account and defendant is not liable therefor.

The remaining items in the account (3 and 4) were ordered and delivered after Schumacher took possession of the farm. Rudolph A. Wolf, a poultry broker who represented plaintiff on a commission basis in connection with the sales in question, testified that when he telephoned in to Georgia the order which he obtained on July 3, he advised plaintiff of the change in ownership of the farm and to charge the poultry to defendant. These remaining items were not entered on Wells' account record card.

■ The evidence in this case proved that Schumacher held himself out as the manager of defendant in the operation of the farm and that one or more of the officers of defendant knew what Schumacher was doing and permitted him to do it. The opening of the checking account in Geneva Savings & Trust Company in defendant's name on a signature card signed by its treasurer, the incurring of bills in substantial amounts in defendant's name, and the application for Workmen's Compensation for defendant filed with the Industrial Commission of Ohio clearly supported this proposition.

While defendant may not have expressly employed Schumacher as its manager to operate the farm in its name, it did hold out Schumacher as having the authority to do so. It had contracted to purchase the farm as a going business. The good will of the business would have been destroyed if operations had been discontinued. The defendant was vitally interested in the continued operation of the farm, so that it could ultimately acquire the good will of the business.

Plaintiff relied on the holding out of Schumacher in selling Items 3 and 4 in its account. In making said sales, its agent believed he was selling to the defendant.

A corporation can only act through its officers and agents. Where a corporation holds out a person as its agent with authority to act and another relies thereon to his injury, the corporation is estopped to deny that said person was its agent. The defendant is, therefore, estopped to deny that Schumacher was its agent.

Under the circumstances plaintiff is entitled to judgment for Items 3 and 4 in its account in the amount of $5,097.-34 less the credits for returned poultry in the amount of $1,407.23.

This memorandum is adopted as findings of fact and conclusions of law. Judgment may be entered in favor of plaintiff in the amount of $3,690.11 with interest at 6% from July 8, 1954.